## JOHNSON & MORAN v. O. P. BUCHANAN.

Decided March 6, 1909.

**1.—Agency—Revocation.**

As a contract of agency cannot be specifically enforced, the principal may at any time revoke the authority given the agent, when that authority is not coupled with an interest, even though the contract expressly provides that it is irrevocable; but the exercise of this power in violation of the terms of the contract renders the principal liable in damages as for breach of any other contract.

**2.—Same.**

When there has been an employment of an agent for a definite period and the agent is discharged without cause before the expiration of the period, the principal is liable to the agent for the damages occasioned thereby.

**3.—Brokers—Revocation of Agency.**

A firm of land agents was given the exclusive agency to sell certain land within ninety days upon certain terms. Before the expiration of the time the owner notified the agents that he desired to withdraw the property from the market as he was negotiating an exchange of the same and was going to inspect the property offered him. The agents replied that they had a prospective purchaser for the land who would inspect the same next day. The purchaser did arrive on the next day, inspected the land and agreed to buy it, but the owner declined to consummate the sale. Held, the agents were entitled to recover the commissions agreed upon, and this whether the attempt to revoke the agency was effectual or not, and without regard to the good faith of the owner in attempting the revocation.

**4.—Same—Sale by Owner.**

Although the owner of land has given to certain agents the exclusive agency to sell his land within a certain time, he has the right to sell the same himself during said period without incurring liability to the agents.

**5.—Agency—Contract—Variance.**

Where land agents in a suit for commissions for the sale of land based their right to recover upon having found a purchaser at the price and upon the terms authorized by the owner, and there was no evidence that the owner had agreed to furnish an abstract of title to the land, a contract in writing given by the agents to a prospective purchaser binding the owner to furnish an abstract of title was admissible in evidence in disproof of plaintiff's allegation that they had sold the land upon the terms authorized by the owner.

**6.—Contract—Custom—Pleading—Evidence.**

Where plaintiffs sued for commissions upon an express contract concerning the sale of land, testimony as to a custom in the sale of such land was inadmissible.

ON REHEARING.

**7.—Brokers—Terms of Sale—Bond for Title—School Land—Public Policy.**

There is no substantial difference between a deed to school land reciting the consideration partly paid and partly in promissory notes with vendor's lien reserved and containing a stipulation that the vendor should perfect the title in the vendee by completing the statutory period of occupancy, and a bond for title reciting the same consideration and binding the vendor to the same undertaking as to occupancy; therefore it cannot be said that agents who are authorized to sell school lands on time reserving vendor's lien to secure unpaid purchase money notes and binding their principal to perfect the title by the statutory occupancy, exceeded their authority by binding the principal to give his personal bond for title without penalty to the same undertaking as to occupancy. Nor is such a contract for the sale of school land contrary to public policy.

**8.—Bond for Title—Definition—Effect.**

A bond for title is an instrument which evidences a contract for the sale of land, and is substantially an agreement by the vendor to make to the vendee a title to the land purchased. Where the purchase money is paid, it vests in the purchaser equitable title, under our laws, sufficient to enable him to recover and defend the possession in any action wherein his right to the possession may be drawn in question; it is superior to the legal title remaining in the vendor, and a court of equity will compel a specific performance by decreeing a conveyance by the vendor of the legal title.

Appeal from the District Court of Midland County. Tried below before Hon. W. K. Homan.

*Caldwell & Whitaker,* for appellants.—When an agent has been employed for a fixed period the agency can not be rightfully terminated before the termination of that period at the mere will of the principal, but only in accordance with some expressed or implied condition of its continuance. Stringfellow v. Powers, 4 Texas Civ. App., 199; Evans v. Gay, 74 S. W., 575; McLane v. Maurer, 28 Texas Civ. App., 75; Duval v. Moody, 24 Texas Civ. App., 627; Mechem on Agency, secs. 210, 621 and 622; Glover v. Henderson, 25 S. W. (Mo.), 177; McCray & Son v. Pfost, 94 S. W., 998.

The appellee having refused to consummate the sale after the purchaser was furnished him by appellants, he can not now be heard to say, in order to defeat appellants' suit for commission, that provisions were inserted in the contract subsequently drawn by appellants, to which he never agreed. Gibson v. Gray, 17 Texas Civ. App., 646; Conkling v. Krakauer, 70 Texas, 735; O'Brien v. Gilleland, 79 Texas,

602; Brackenridge v. Claridge, 91 Texas, 527; Wilson v. Clark, 35 Texas Civ. App., 92; Smye v. Groesbeck, 73 S. W., 972; Halff v. O'Connor, 14 Texas Civ. App., 191; Mechem on Agency, secs. 612, 613 and 967.

*A. S. Hawkins* and *J. E. Hackett,* for appellee.—The agency in this case was special and not general, and did not consist of a power coupled with an interest and could therefore be revoked at any time. Hollingsworth v. Young County, 91 S. W., 1095; Cleveland v. Williams, 29 Texas, 213; 1 Am. & Eng. Ency. of Law (old ed.), 44.

DUNKLIN, ASSOCIATE JUSTICE.—Appellants, real estate brokers in Midland, sued appellee to recover a commission which they claim they earned by procuring a purchaser ready, willing and able to buy appellee's ranch and other property in Midland County, and from a judgment in favor of defendant, plaintiffs have appealed.

On April 23, 1907, appellee gave to appellants the exclusive agency for ninety days from that date to sell his ranch at a certain price and on certain terms, agreeing to pay them a commission of five percent of the selling price should they succeed in making such a sale. On May 29, 1907, appellee notified them that he desired to withdraw the property from the market as he was himself negotiating an exchange of the ranch for property in the East and was making his arrangements to go and inspect the property so offered in exchange. Prior to that date appellants had entered into negotiations with G. H. Butler to sell him the ranch and were unwilling that their agency should be terminated, informing appellee that they were expecting Butler from Lubbock on the following day to inspect the ranch with the view of purchasing it. Appellant Moran testified in effect that he consented to appellee to make the contemplated exchange of the ranch for the eastern property provided appellants had not previously sold the ranch, and that appellee assented to that proposition; but this evidence was controverted by appellee, who testified that he withdrew the property from the market unconditionally. On the following day, May 30, 1907, G. H. Butler came to Midland to inspect the property, and appellants on the same day went with him to appellee's ranch, where they found appellee, and with appellee's consent rode over and showed Butler the property. Inspection of the property finished, Butler told appellee he would buy the property, but appellee declined the offer. The evidence was conflicting as to whether or not this offer by Butler to purchase the property was upon the terms originally authorized by Buchanan, plaintiffs in the suit introducing evidence to sustain the affirmative of that issue and defendant's evidence supporting the negative.

In the first count of their petition plaintiffs sued for the five percent commission stipulated in the contract, alleging that they had procured a purchaser in Butler to buy said property, and that they had thereby performed the services requisite to entitle them thereto, while the contract of employment was in full force and effect. In the second count of their petition they alleged in the alternative that if the agency created by the contract was revoked by defendant on

May 29, nevertheless their negotiations had already begun with Butler, who on the day following had offered to purchase the property at the price and upon the terms authorized by defendant, that the revocation of agency was wrongful, and that defendant was liable for the five percent commission the same as if there had been no revocation of the agency.

In the court's charge the jury were instructed as follows: "Defendant Buchanan had the right at any time to revoke the authority given Johnson & Moran for the purpose of selling the property himself, and if you find from the evidence that before Johnson & Moran had secured a purchaser for the property at the price and on the terms authorized by Buchanan, he, Buchanan, in good faith had taken the property off the market for that purpose and had so notified Johnson & Moran, you will find for the defendant." This was in effect an instruction that if the jury should believe that on May 29 Buchanan revoked the agency, then their verdict should be in favor of defendant irrespective of any finding they should make upon any other issue, and we believe the instruction was error. Under the contract above recited the right of Buchanan himself to sell the property at any time and to thereby terminate the agency without incurring any liability to appellants, is unquestioned. (Mechem on Agency, 967.) No evidence was introduced even tending to impeach the good faith of Buchanan in desiring to withdraw the property from the market for the purpose of exchanging it for other property in the event he should decide so to do after inspecting the property so offered him in exchange. It was also undisputed that Buchanan intended to go East and inspect the property, but it does not appear that any definite time had been appointed to make the trip, and before he started and while it was uncertain that he would make the exchange offered him, plaintiffs, according to their evidence, tendered him a purchaser in Butler, ready, willing and able to buy the property for the price and upon the terms offered. The only reason assigned by Buchanan for his action in revoking the agency on May 29, if he did revoke it, was that he desired to inspect the property offered him in exchange and if that suited him to make the exchange.

Mr. Mechem in his work on Agency, 3d ed., sec. 621, says: "When, however, there has been an employment for a definite period and the agent is discharged without cause before the expiration of that period, or is not permitted to undertake the performance at all, the principal is liable to the agent for the damages occasioned thereby, as in any other case of the breach of a contract." As a contract of agency can not be specifically enforced, the principal may revoke the authority given the agent, when that authority is not coupled with an interest, even though the contract of agency expressly provides that it is irrevocable. But while in this sense he has the right to revoke it, the exercise of this power in violation of the terms of the contract is subject to the same liability to the agent as would be incurred by the breach of any other contract. (Mechem on Agency, sec. 209.)

In the case of McLane v. Maurer, 28 Texas Civ. App., 75, a recovery by the agent on a contract breached by the principal before

performance by the agent was upheld and in that case the following is quoted with approval from Sedgwick on Damages, sec. 177: "It is the rule that a plaintiff may recover compensation for any gain which he can make it appear with reasonable certainty the defendant's wrongful act prevented him from acquiring, subject, of course, to the general principles as to remoteness, compensation, etc. His compensation will be measured by the most liberal scale which he can show to be a proper one." And again, sec. 192 of same author: "The benefits which would have accrued to plaintiff from a contract broken by the defendant may be recovered, though they are in a certain sense contingent." See also Harrison v. Augerson, 115 Ill. App., 226, cited in 3 Decennial Dig., 1716.

If on May 30, 1907, Butler was ready, willing and able to buy the land at the price and upon the terms authorized by Buchanan in his contract employing appellants to secure a purchaser, and if he offered to Buchanan so to do, then we believe, under the evidence introduced, appellants were entitled to recover, irrespective of whether or not their agency had been revoked by Buchanan on May 29, and the measure of their recovery would be the commission fixed by the terms of the contract of employment. (Evans v. Gay, 74 S. W., 575.)

There was no error in admitting in evidence the contract executed by G. H. Butler and Johnson & Moran as agents of appellee, dated May 30, 1907, for the purchase of the ranch by Butler, as complained of in appellants' sixth assignment of error. The basis of appellants' suit was that they had procured a purchaser in Butler ready, willing and able to purchase at the price and upon the terms authorized, and this contract was clearly admissible to disprove that contention. (Hagler v. Ferguson, 50 Texas Civ. App., 191; Evants v. Fuqua, 50 Texas Civ. App., 201.)

The court was also correct in refusing to allow Volney Johnson to testify to statements made by W. J. Moran out of the hearing of appellee, as complained of in the seventh assignment.

In their eighth assignment appellants challenge the correctness of the following instruction given the jury by the court: "The defendant Buchanan would not be bound by any custom referred to in the testimony unless said custom and usage was known to him at the time he listed the property with plaintiffs for sale." This charge had reference to the testimony of plaintiff W. J. Moran that it was the general custom over the western country when school land was sold by the original purchaser from the State before he had lived on it the period of time required by law to perfect title, to give bond for title to his vendee when his conveyance was not to be made until after the required occupancy had been completed. Appellants did not plead this custom and this evidence was therefore not admissible to prove the express contract upon which they had sued. (Moore v. Kennedy, 81 Texas, 144; Creager v. Douglass, 77 Texas, 487.) Besides, if it had been pleaded in such a manner as to show that it was binding upon appellee, we think there would have been no error in the charge of the court complained of, and the assignment is overruled. Harrell v. Zimpleman, 66 Texas, 294.

For the errors above discussed the judgment of the trial court is reversed and the cause remanded for another trial.

### ON MOTION FOR REHEARING.

Appellee calls attention to the fact that by the terms of Butler's written contract with appellants as agents of appellee to purchase the land in controversy, appellants assumed to bind appellee to execute a bond for title to the eight school sections, and appellee contends that this was such a variance from appellants' authority to sell as to require an affirmance of the judgment rendered by the trial court irrespective of any of the errors discussed in our opinion reversing the judgment. This contention was not made by appellee in his former brief. Appellants' theory, as we conclude from the record, was that when appellee employed them to sell the land he stipulated that he would complete the statutory period of occupancy of the school sections which had not been completed supporting this contention by the testimony of appellant Moran, and that the particular character of instrument which appellee would execute to the purchaser was not discussed. The evidence does not show that to thus occupy the land would be onerous upon appellee; it may have been a valuable right to him. The contract above referred to stipulated that Butler should pay part of the purchase money in cash and execute vendor's lien notes for the balance, and assumed to bind appellee to execute to Butler a bond for title binding appellee to execute a good and sufficient deed or deeds of conveyance to the school sections when they had been "lived out" under his contract for purchase from the State.

In the case of Vardeman v. Lawson, 17 Texas, 15, Judge Wheeler said, "There can be no doubt as to what is to be understood by a bond for title. It is an instrument which evidences a contract for the sale of land, and is substantially an agreement by the vendor to make to the vendee a title to the land purchased. Where the purchase money is paid, it vests in the purchaser the equitable title, under our law, sufficient to enable him to recover and defend the possession in any action wherein his right to the possession may be drawn in question; it is superior to the legal title remaining in his vendor, and a court of equity will compel a specific performance by decreeing a conveyance by the vendor of the legal title." And this is the proper interpretation of the expression "bond for title," used in the contract executed by Butler with appellants as agents of appellee. The contract did not provide that the bond should be in any penal sum, nor that the same should be signed by sureties. In the case of Gainer v. Cotton, 49 Texas, 120, it was said: "If, by the bond, any right to or interest in the land vested in Love it was not a mere equity which might become stale or be lost by his failure or neglect to assert it or to demand some other character of conveyance. The purchase price being fully paid and the sale being absolute and unconditional, so was Love's title. A more formal conveyance, or one which would better serve as evidence of the sale, might be desirable, and, if stipulated for, might be enforced by the appro-

priate tribunal if its aid were invoked in the proper time and manner; but when made, it would merely afford more formal or satisfactory evidence of the title already vested in the purchaser, and would not confer a different character of right to that by which he previously held."

There can be no substantial difference between a deed to the school sections reciting consideration partially paid and part in promissory notes with vendor's lien retained with a stipulation that the vendor should perfect the title in the vendee by completing the statutory period of occupancy, and a bond for title reciting the same consideration and binding the vendor to the same undertaking as to occupancy. Neither would a trade between appellee and Butler by the terms of which appellee would execute to Butler a bond for title to the school sections and then complete the statutory period of occupancy necessary to perfect title, be contrary to public policy, as contended by appellee. Witcher v. Wiles, 75 S. W., 889.

For the reasons above given appellee's motion for rehearing is overruled. However, in view of another trial we deem it proper to say that in the contract executed by Butler above referred to, appellants stipulated that appellee would furnish abstract of title to the land. It does not appear from any testimony that appellee expressly agreed to do this, and for this reason we said in our original opinion that the contract was admissible in evidence as tending to contradict the contention made by appellants upon the trial.

*Reversed and remanded.*