BRADY v. RICHEY & CASEY. (No. 5630.)

(Court of Civil Appeals of Texas. San Antonio. May 17, 1916. Rehearing Denied June 14, 1916.)

1. BROKERS ⚙═86(1)—ACTION FOR COMMISSION —SUFFICIENCY OF EVIDENCE.

In an action for a commission for effecting a lease of defendant's theater property through negotiations carried on by plaintiff and its employé at defendant's solicitation, and with defendant's acquiescence and acceptance of benefits, evidence *held* to sustain a verdict for the plaintiff.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 117, 118; Dec. Dig. ⚙═86(1).]

2. BROKERS ⚙═82(4)—ACTION FOR COMMISSION —PLEADING—VARIANCE.

In a broker's action for a commission for effecting a lease of defendant's property for a term of 15 years, the failure of the petition to show that the lease contained a provision under which it might be canceled by the lessee on the forfeiture of a certain amount did not prevent a recovery on a ground of a variance between the allegation and proof.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 103; Dec. Dig. ⚙═82(4); Pleading, Cent. Dig. § 1334.]

3. BROKERS ⚙═69—COMMISSION—AMOUNT.

Under an express agreement that a broker's services should be rendered to an owner directly soliciting such services to effect a lease, or under an implied agreement showing the owner's appropriation of such services, and where the compensation was not agreed upon, the law implied a promise to pay a reasonable amount.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 55; Dec. Dig. ⚙═69.]

4. BROKERS ⚙═8(3)—ACTION FOR COMMISSION —AUTHORITY FROM OWNER.

In a broker's action for a commission for effecting a lease of defendant's property, evidence *held* to show the defendant's express authority to secure a contract to rent to a certain party on the terms finally embraced in the contract.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 9; Dec. Dig. ⚙═8(3).]

5. BROKERS ⚙═82(4)—ACTION FOR COMMISSION—COMMISSION—EVIDENCE.

A pleading that defendant became liable to pay the fair and usual commission for a broker's services in effecting a lease was sufficient to authorize proof of what was the reasonable value of the services performed.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 103; Dec. Dig. ⚙═82(4); Pleading, Cent. Dig. § 1334.]

6. CUSTOMS AND USAGES ⚙═18—PLEADING AND PROOF—KNOWLEDGE—BROKER'S COMMISSION.

In a broker's action for a commission for effecting a lease, where it was not alleged that the defendant knew of any custom as to the commission for such services, or that any custom prevailed which was so commonly known that he was legally chargeable with notice thereof, the custom of the real estate business would not be binding upon him and enter into the contract alleged to be made by him, so that proof of such custom was inadmissible.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. § 40; Dec. Dig. ⚙═18.]

7. CUSTOMS AND USAGES ⚙═11—PLEADING— EFFECT.

Where it is pleaded and proved that there is a custom as to the commission for effecting a lease of which a party defendant had knowledge, or that there was a custom so notorious as to charge him with knowledge thereof, the law implies a promise to pay the compensation fixed by such custom.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. § 22; Dec. Dig. ⚙═11.]

8. BROKERS ⚙═69—COMPENSATION—AMOUNT.

Where no custom binding on the parties is pleaded and proven, a broker is entitled to rea-

sonable compensation in the absence of an agreement as to the amount.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 55; Dec. Dig. ⊜⇒69.]

**9. BROKERS ⊜⇒85(10)—ACTION FOR COMMISSION—EVIDENCE—CUSTOM.**

In a broker's action for commission for effecting a lease for a term, where no custom as to the amount of the commission was pleaded and proven, the end accomplished, as well as the time and effort expended, were to be considered, though evidence that there was a customary rate for renting property for a term, and that there was a custom for the landlord to pay the commission for leasing property, was inadmissible.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 114; Dec. Dig. ⊜⇒85(10).]

**10. APPEAL AND ERROR ⊜⇒926(7)—REVIEW—PRESUMPTION—QUALIFICATION OF WITNESS.**

Under an assignment of error in the admission of testimony of a witness as to a reasonable commission for effecting a lease, not objecting that the witness had not qualified himself to state his opinion on that matter, it would be assumed that he was duly qualified.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3745, 3746; Dec. Dig. ⊜⇒ 926(7).]

**11. EVIDENCE ⊜⇒472(10)—MATTERS DIRECTLY IN ISSUE—AMOUNT OF COMMISSION.**

In such action, testimony of a witness that he considered 2 or 3 per cent. to be a reasonable commission for effecting a lease for a term, relating to the direct issue in the case, was inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2186, 2187; Dec. Dig. ⊜⇒472(10).]

**12. APPEAL AND ERROR ⊜⇒728(1)—ASSIGNMENT OF ERROR—SUFFICIENCY OF OBJECTION.**

An assignment that there was no basis for a question as to what was a reasonable commission for a broker's services on the ground that the services alleged to have been rendered were different from those stated in the hypothetical question submitted was too general, because not pointing out just what should have have been changed in the question.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3010; Dec. Dig. ⊜⇒728(1).]

**13. EVIDENCE ⊜⇒553(3) — EXAMINATION OF EXPERT—HYPOTHETICAL QUESTION.**

In a broker's action for a commission for effecting a lease for a term, it was not error to permit him to embrace in a question as to what was a reasonable commission for such services his own construction of the terms of the lease, especially in the absence of a construction thereof by the court; as, where the terms of an instrument are ambiguous and the question as to what the parties intended is for the jury, it is proper to ask a witness to state his opinion based upon the construction contended for by a party, upon which the other party may inquire thereon, taking into view his construction of the contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2371; Dec. Dig. ⊜⇒553(3).]

**14. TRIAL ⊜⇒136(3)—QUESTION FOR JURY—CONSTRUCTION OF CONTRACT.**

If a contract is not ambiguous it is proper to ask the court to construe it and to require it to be described in all questions in accordance with the court's construction, and if it is ambiguous, but the evidence makes its intention clear beyond dispute, it is proper for the court to construe the contract for the jury and require

them to accept such construction in estimating the value of the services.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 326; Dec. Dig. ⊜⇒136(3); Pleading, Cent. Dig. § 75; Witnesses, Cent. Dig. § 851.]

**15. EVIDENCE ⊜⇒543(2)—OPINION EVIDENCE—VALUE OF SERVICES.**

A skilled witness, who is familiar with services connected with some particular profession, trade, or calling, may estimate their value, and it is not required that he should be intimately acquainted with the nature of the services which he is appraising, but he may know them in a very general way.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2356½; Dec. Dig. ⊜⇒543(2).]

**16. EVIDENCE ⊜⇒317(1) — DECLARATIONS — CONVERSATIONS BETWEEN THIRD PERSONS.**

In a broker's action for a commission for effecting a lease for a term, evidence of a conversation between the broker's employé and the lessee, not in the presence of the lessor, to the effect that the lessee had made a bad lease and the lessor a good one, was inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1174; Dec. Dig. ⊜⇒317(1).]

**17. EVIDENCE ⊜⇒471(6) — FACTS OR CONCLUSIONS.**

In such case, the lessee should be required to testify to the facts with regard to what occurred between himself and the broker's employé, instead of his conclusion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2154; Dec. Dig. ⊜⇒471(6); Witnesses, Cent. Dig. § 833.]

**18. BROKERS ⊜⇒85(10)—ACTION FOR COMMISSION—EVIDENCE.**

The fact that plaintiff's services had procured a lessee who had paid seven months' rent might be considered by the jury in estimating the reasonable value of the services.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 114; Dec. Dig. ⊜⇒85(10).]

**19. BROKERS ⊜⇒54—ACTION FOR COMMISSION—RESPONSIBILITY OF LESSEE—ESTOPPEL.**

Where a broker alleged a contract to procure a responsible lessee, the defendant, who accepted the lessee, procured and entered into a lease with him, was estopped from alleging anything against the lessee's responsibility, except fraud on the part of broker's employé, inducing his acceptance.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 75–81; Dec. Dig. ⊜⇒54.]

**20. BROKERS ⊜⇒85(3)—ACTION FOR COMMISSION—EVIDENCE—RELEVANCY.**

Where the lessor did not allege fraud on the part of the broker's agent in inducing his acceptance of the lessee, testimony of the lessee that he was able to carry out the lease contract was irrelevant, and it was also irrelevant in view of the trial court's construction of the contract, so that the lessee could comply with it by failing to pay rent, thereby forfeiting a certain amount on deposit with the lessor.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 106; Dec. Dig. ⊜⇒85(3).]

**21. APPEAL AND ERROR ⊜⇒1050(2)—HARMLESS ERROR—ADMISSION OF EVIDENCE.**

Such evidence was calculated to impress the jury with the idea that it was the lessee's intention to keep the property and pay on the lease promptly during the term and to cause them to allow compensation on the theory that the lease would continue for the entire time.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4154; Dec. Dig. ⊜⇒1050(2).]

Appeal from District Court, Bexar County; W. F. Ezell, Judge.

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by Richey & Casey against Thomas F. Brady. Judgment for plaintiffs, and defendant appeals. Reversed, and cause remanded.

Taliaferro, Cunningham & Birkhead and Leo Tarleton, all of San Antonio, for appellant. Boyle & Storey and Wm. Church, all of San Antonio, for appellees.

MOURSUND, J. R. A. Richey and L. A. Casey, composing the firm of Richey & Casey, sued Thos. F. Brady for $5,400, with interest thereon at the rate of 6 per cent. per annum, alleging: That plaintiffs were engaged in the real estate, rental and brokerage business in the city of San Antonio, and in order to properly conduct the same were compelled to employ many agents. That defendant, Brady, is the owner of a certain building, a portion of which is adapted and intended for use as a theater. That—

"on or about February 1, 1914, plaintiffs, acting by and through one of their said agents and employés, to wit, R. C. Hill, were duly employed by said defendant, as his agent, by directly soliciting their services, by approving and participating in all negotiations, and by agreeing to, acquiescing in, and accepting the benefits of said services and negotiations, to secure a responsible tenant, under contract of lease, for said theater, said lease to cover a period of 15 years, at a monthly rental of $1,500, payable in advance, the yearly rental of said theater being the sum of $18,000, or for a total amount of $270,000 for the full term of said 15 years; that in pursuance of said employment by said defendant, plaintiffs, acting by and through their said agent and employé, R. C. Hill, immediately proceeded to carry out the terms and conditions of their said employment, by energetic negotiations for securing a tenant for said theater, under the terms and conditions and for the period of time for which the same was to be leased, said defendant participating in said negotiations, instructing said plaintiffs by and through said Hill how such negotiations should be conducted, said negotiations being directed at and confined to one W. J. Lytle, until on or about July 21, 1914, when plaintiffs, acting by and through said Hill, succeeded in successfully closing a contract in writing for the lease of said theater, the same being made and entered into by and between the defendant and the said Lytle, under the terms and conditions heretofore set out, to wit, at the rate of $1,500 per month for the full term of 15 years, said contract of lease being prepared by said plaintiffs, acting by and through said Hill, under the instructions and at the special instance and request of said defendant; that in pursuance of the provisions, conditions, and terms of said contract, on or about September 10, 1914, a formal lease was prepared by said Hill and signed by and between said Lytle and said defendant, Brady, embodying substantially the terms of said contract, whereby the said Lytle agreed and bound himself to lease said theater, and did lease the same, for a period of 15 years at an annual rental of $18,000, payable monthly in advance at the rate of $1,500 per month, and said lease since said date, and now, is in full force and effect."

Plaintiffs further alleged that:

"In addition to and irrespective of the solicitation, approval, acquiescence in and acceptance of said services of plaintiffs as aforesaid, it is the usage and custom, in transactions of the nature and character herein set out, to wit, in the rental, lease, or sale of real property, buildings, or otherwise by an agent or broker, that his commission or compensation therefor shall be paid by the owner of such property so rented, leased, or sold, unless by special agreement or understanding the same shall be paid by the lessee or vendee thereof, and plaintiffs specially allege that no such contract, agreement, or understanding was had in this instance by or with either said defendant or the said W. J. Lytle"

—that by reason of said services so rendered by the plaintiffs the defendant became liable to pay the fair and usual commission and compensation for such services, and that the usual, reasonable, and customary fee is and was 2 per cent. of the amount due for the full period, namely, 2 per cent. of $270,000. Defendant's answer consisted of a general demurrer, special exceptions, and denials of the material allegations of the petition. The trial resulted in a verdict and judgment in favor of plaintiffs for $5,400, with interest thereon at the rate of 6 per cent. per annum.

[1] The first 10 assignments of error question the sufficiency of the evidence to sustain the verdict and judgment. In deference to the verdict of the jury we find that Brady, knowing Hill to be an employé of Richey & Casey, who were engaged in the real estate and insurance business, expressly agreed to avail himself of Hill's services for the purpose of procuring a lessee for the theater portion of his building for 15 years; that the conversations between them were of such character as to reasonably charge Brady with notice that Hill expected compensation for his services; that no inquiry was made by Brady with regard to the amount of compensation he would be expected to pay, nor was any statement made by Hill in regard to compensation until after the preliminary contract was signed; that Hill prepared the preliminary contract, which was approved by Brady and Lytle, and a meeting was then had at which it was signed by them; that the preliminary contract provided for various things to be done by Brady in preparing the theater for use, and fixed September 19, 1914, as the last day upon which a final contract should be executed; that the final contract was prepared by Brady, who, on September 10, 1914, reminded Hill that the final contract must be signed, and asked him to bring Lytle to Brady, and Hill did so, whereupon the final contract was signed. Hill testified that after the preliminary contract was signed he told Brady he presumed the latter was then ready to pay the commission; that Brady first said he supposed Lytle was going to pay the commission, to which Hill replied that it was always customary for the owner to pay the commission; that he gave Brady a letter he had procured from the Real Estate Exchange, stating what the customary commission would be, but Brady did not have his glasses and said he would read it later; that in the next conversation Brady said he would talk to

Hill about the commission in a few days; that in the third conversation Brady said he did not think the matter of commission ought to be taken up until after the lease was signed, as the first was just a preliminary contract, and Hill said that would be agreeable; that after the final lease was signed he again broached the subject of commission, whereupon Brady complained of illness, and asked Hill to see him at the end of the week; that he did so, and Brady put him off until the first of the next week, and at that time contended he ought not to pay a commission on the full 15-year lease because he did not know that the tenant would stay in the building; that they argued the matter for quite a while, and Brady finally told him to come back in a few days; that finally Brady told him he thought it would be better to leave it to Richey & Casey to suggest the basis for estimating commission, and for Hill to tell them to see Brady; that he notified Richey & Casey, and had no further conversations with Brady. Richey & Casey took up the matter with Brady, but no agreement was reached. Richey & Casey contended for 2 per cent. on the amount which would be paid in the 15 years if the lease was kept in force, while Brady contended that Lytle was not bound to carry out the lease, for there was a clause in the contract which permitted him to give it up by forfeiting $9,000. The final contract, in part, reads as follows:

"For and in consideration of nine thousand ($9,000.00) dollars the receipt of which is hereby acknowledged, first party this day agrees to lease to second party the theater, now in course of construction, at the corner of St. Mary and College streets in this city for a term of fifteen (15) years beginning on the date that same is completed and ready for occupancy and ending on the corresponding day in the year 1929, fifteen (15) years thereafter.

"For the use thereof second party is to pay fifteen hundred ($1,500.00) dollars per month or eighteen thousand ($18,000.00) dollars per year, paying the same monthly in advance.

"As a guaranty for the carrying out of the provisions of the lease contract second party shall deposit with the first party nine thousand ($9,000.00) dollars on which deposit first party will pay 6 per cent. interest per annum, paying the same semiannually as it accrues. Said nine thousand ($9,000.00) dollars to apply as the rent for the last six months of the lease contract if not forfeited under the conditions therein specified.

"Should there at any time be any default in the payment of rent for five days from the date it is due or in any of covenants herein contained, then it shall be lawful for the first party to re-enter said premises and remove all persons therefrom without prejudice to any legal remedies which may be used for the collection of rent, all and every claim for damages for or by said re-entry being expressly waived, and should legal services be employed to collect any rents after default is made, then and thereupon 10 per cent. is hereby added to the rent or rents so defaulted for an attorney's fees. And in the event of such default the guaranty of nine thousand ($9,000.00) dollars shall at once become the property of first party as liquidated damages in full settlement for breach of the lease contract."

The other portions are not deemed material in this suit. The preliminary contract contained the same language with reference to time of lease, and the clause relating to default is almost a literal copy of a similar clause in the preliminary contract.

The above conclusions of fact dispose, adversely to appellant, of most of his contentions with regard to the sufficiency of the evidence, but there is one which requires further consideration. Appellant contends that the evidence wholly fails to show that appellees procured for appellant a lease contract such as is described in the petition; that the petition alleges plaintiffs were employed to secure a lease contract for 15 years, at a monthly rental of $1,500, payable in advance, or for the total amount of $270,000 for the term of 15 years, and that the contract introduced in evidence is one which can be forfeited by Lytle at any time by failing to pay, in which event the $9,000 deposited with Brady would be forfeited as liquidated damages for the breach of the contract, and that therefore plaintiffs only secured for defendant an option contract.

We have copied, in stating the case, the allegations of the petition material to be considered. It will be noted that, in addition to the first allegation with respect to the nature of the employment, the further allegation is made, in paragraph 5, that a contract was successfully closed in writing for the theater, which was entered into by defendant and Lytle under the terms and conditions thereinbefore mentioned, which contract was prepared by plaintiffs, acting through Hill, under the instructions and at the special instance and request of defendant.

The question raised is not one which goes to the question of whether Brady is liable to plaintiffs under the evidence adduced, but whether the case alleged has been established by the evidence. Had plaintiffs pleaded that they were employed to procure a lease contract containing certain terms and naming all the terms of the contract introduced in evidence, the objection could not have arisen, nor could it have been urged if a copy of the contract had been attached and referred to as a copy of the contract which plaintiffs were employed to procure, even if plaintiffs had stated an erroneous construction of its terms in the petition. But plaintiffs relied upon their general description of the contract to be obtained, and their allegation that the contract actually executed was such a contract as they had been employed to secure. When the contract is introduced, it is found that it purports to be a lease contract for 15 years, but contains a clause relating to default upon the proper construction of which the parties are unable to agree, and which defendant contends renders the contract subject to be terminated by Lytle by failing to pay rent, leaving Brady with no further rights than to retain the

$9,000. While the last sentence of that portion of the contract hereinbefore copied, if considered alone, supports the contention, when it is considered in connection with what precedes it, a serious doubt arises as to what the intention of the parties really was. Was it their intention that if Lytle failed to pay rent within five days after it accrued or failed to comply with any other covenant, the contract should be at an end, whether or not Brady elected to so treat it, or did the parties by the words, "such default," used in the last sentence mean a default availed of by Brady to retake possession of the premises. The contract provides that Brady may, in case of default, enter upon the premises "without prejudice to any legal remedies which may be used for the collection of rent," thus evidencing an intention that the rent accrued, at least, is to be paid by Lytle and not to be covered by the $9,000, even if Brady enters upon the premises.

[2] Brady testified to statements on his part, made to Richey, according to which the intention was to provide that Lytle could forfeit the contract at any time upon paying $9,000. But, conceding that the contract contained a clause giving Lytle the right to cancel by failing to pay rent, nevertheless it is a lease contract which may remain in existence for 15 years. Appellant relies upon the cases which hold that where a broker is engaged to sell property the mere procurement of a prospective purchaser who enters into an option to buy the property, but never in fact does so, is not sufficient to entitle the broker to commission. The rule relied on is a correct one, as is the further one that, even if the optional contract is signed by the employer, it will not be construed as a waiver of the original terms of employment and an acceptance of the services as a complete performance on the part of the broker. By granting the option the owner is merely assisting the agent in his efforts to bring about a sale. If the option is exercised, or the person holding the option is willing to exercise it, but is prevented by the owner, the broker becomes entitled to his commission. We do not think these rules apply in this case. The contract finally made by the parties was not a contract to enter into a lease in the future, but constituted in itself a lease. There was nothing further · that the agent could do. The lease was made pursuant to instructions of Brady and was executed by him. On its face it purported to be a lease for 15 years, and, conceding that it contained a provision under which it could be canceled by the lessee, should that fact be held to make it a different instrument from the one which plaintiffs alleged they were employed to secure, and did secure? To hold that the variance is fatal would be requiring such strictness of accord between pleading and proof as is unnecessary to effectuate the purposes of the rule requiring proof to correspond to the allegations. Defendant was apprised by plaintiffs' pleadings that they sought to recover compensation for procuring the particular contract, and their failure, in describing the contract, to state that it contained the clause relating to default, setting it out, should not prevent a recovery. We overrule assignments 1 to 9, inclusive.

[3] We regard the objections to the pleadings made in assignments 10 and 11 as being without merit. Plaintiffs alleged an express agreement that the services should be rendered, by stating that defendant directly solicited their services to make the lease, and alleged an implied agreement, by stating facts showing a conscious appropriation by defendant of their labors. In either case, the compensation not being agreed upon, the law implies a promise to pay a reasonable amount.

[4] By assignments 12 and 13 complaint is made of paragraph 1 of the charge. Several objections are urged, but some are too general. It is contended that the court assumes in said paragraph that an express contract was made, but the charge is not subject to such objection. It is contended, further, that there was neither pleading nor evidence justifying a finding of an express agreement of employment, and that the charge did not limit the jury to an implied contract, but permitted them to find whether there was any contract of employment. We have stated our view of the pleadings in discussing the preceding assignments. The evidence of Hill was to the effect that Brady, knowing Hill was with Richey & Casey in the real estate business, expressly authorized Hill to go ahead and see what he could do with the people in regard to renting the theater. As Hill said, "We believe we can rent it," Brady must have known he was speaking for his employers, Richey & Casey, and his subsequent statements and conduct as testified to by Hill show an express authorization to secure a contract to rent to Lytle on the very terms finally embraced in the contract. The assignments are overruled.

The fourteenth assignment complains of the second paragraph of the charge, wherein the court instructed the jury that if Brady by words, acts, or conduct, if any, authorized Hill to act for him in procuring Lytle as a tenant, and if they found that, through the acts and negotiations of Hill, Lytle executed the contract of lease introduced in evidence, then to return a verdict for plaintiff. The objection is the same as was made to the sufficiency of the evidence, namely, that the pleadings did not authorize a recovery upon the contract introduced in evidence, and, there being no alternative prayer on a quantum meruit, no recovery could be had. We overrule the assignment for the reasons stated in discussing the first nine assignments.

Assignments 15 to 23, inclusive, are overruled.

[5, 6] Plaintiffs pleaded that defendant became liable to pay the "fair and usual com-

mission and compensation for such service"; that the usual, reasonable, and customary fee for such services is and was 2 per cent. of the amount due for the full period of 15 years, namely $5,400. This pleading, we think, was sufficient to authorize proof of what was the reasonable value of the services performed, but not to permit proof of custom, for it is not alleged that Brady knew of any such custom, or that a custom prevailed which was so commonly known that Brady was legally chargeable with notice thereof. As it was not alleged that Brady was engaged in the real estate business, the customs and usages of that business would not be binding upon him and enter into the contract alleged to have been made by him, unless it was alleged and proven that he had knowledge of the custom relied upon, or that the custom was so general or universal that he was chargeable with knowledge thereof. Gano v. Palo Pinto County, 71 Tex. 99–103, 8 S. W. 634; Johnson & Moran v. Buchanan, 54 Tex. Civ. App. 328, 116 S. W. 875; Holder v. Swift, 147 S. W. 690; Groscup v. Downey, 105 Md. 273, 65 Atl. 930.

[7-9] If it be pleaded and proved that there is a custom of which defendant had knowledge, or the custom is so notorious as to affect the defendant with knowledge thereof, then the law implies a promise to pay the compensation fixed by such custom. If no custom binding on the parties is pleaded and proved, the broker is entitled to reasonable compensation, and in determining what is reasonable under the circumstances of a given case, the end accomplished, as well as the time and effort expended, should be taken into consideration. Ruling Case Law, vol. 4, §§ 42, 67. It was therefore error to permit plaintiff Richey to testify that there was a customary rate for renting property upon a term of years and to state what that rate was. Assignments 24 and 25 are sustained. In this connection, we also sustain assignments Nos. 29, 30, and 31, whereby complaint is made because the court permitted plaintiffs to prove that it was the custom for the landlord to pay commission for leasing property.

Assignment No. 32 shows error, which is of little consequence and would not require a reversal, but in view of another trial we call attention thereto.

[10, 11] Assignment No. 26 is overruled. The witness, Rhodius, was asked, "What would be the reasonable commission for making a transaction of that sort?" to which he answered, "Two or 3 per cent., as I have stated before." The question must be confined to the issue made by the assignment of error. Such assignment contains no objection to the effect that the witness had not qualified himself to state his opinion on the subject under investigation, so we assume he had duly qualified. This being the case, there is no merit in the assignment, for the question related to the direct issue in the case.

[12, 13] Assignments 27 and 33 relate to the same character of proof as assignment No. 26, but contain the additional feature that plaintiffs stated to the witnesses that the transaction was one where a piece of property is rented for $1,500 per month, payable monthly, the lease being for 15 years, amounting to $270,000 in all, with a provision that there shall be a deposit of $9,000 as a guaranty, and then asked the witness what would be a reasonable commission for a broker to make that lease. Each replied that 2 per cent. would be a reasonable commission. The objections presented under assignment No. 27 are regarded as without merit. Under assignment No. 33 it is contended that there was no basis for the question, the contention being that the services alleged to have been rendered by the plaintiff were different from those stated in the hypothetical question submitted. This objection was too general, for it did not point out just what should have been changed in the question. Rogers v. Banking Co., 103 S. W. 463. We do not think it was error to permit plaintiffs to embrace in the question their construction of the terms of the lease, especially in the absence of a construction by the court of the terms thereof. In cases in which the terms are ambiguous and oral testimony is adduced, it frequently becomes a question for the jury to determine what the parties really intended, and in such cases it would be proper to ask the witness to state his opinion based upon the construction contended for by plaintiffs, and defendant could then, if he wanted to do so, ask concerning the value of the services, taking into view his construction of the contract. Railway v. Compton, 75 Tex. 673, 13 S. W. 667.

[14, 15] If the contract is one not ambiguous, it would, we think, be proper to ask the court to construe it and to require it to be described in all questions in accordance with the construction given it by the court. If the contract is ambiguous, but the evidence makes its intention clear beyond dispute, it would be proper for the court to construe the contract for the jury, and require them to accept such construction in estimating the value of the services. A skilled witness, who is familiar with services connected with some particular profession, trade, or calling, may estimate their value, and it is not required that he should be intimately acquainted with the nature of the services which he is appraising. He may know them in a very general way. Chamberlayne on Modern Law of Ev. vol. 3, § 2163. But, as the nature of the contract is of such controlling importance in fixing the compensation for its procurement, it appears to us that its correct construction must enter into the basis upon which the jury allows compensation, and the jury's verdict must rest upon testimony based upon such construction. As the contention is presented by the assignment, we hold that no

error is shown. Both assignments of error are overruled.

The twenty-eighth assignment discloses no error in so far as the question and answer therein copied are concerned.

The thirty-fourth assignment is also overruled.

[16, 17] Assignments 35, 36, and 37 point out errors of such character that we would not be justified in reversing the case thereon, but upon another trial evidence of conversations between Hill and Lytle, not in the presence of Brady, the purport of which was that probably Lytle made a bad lease and Brady a good one, should be excluded, and Lytle should be required to testify to the facts with regard to what occurred between him and Hill, instead of his conclusions.

[18] We overrule assignment No. 38. In estimating the reasonabe value of Hill's services, the fact that such services have procured a renter who has paid seven months' rent may properly be considered by the jury.

[19-21] By assignment No. 39 complaint is made of the admission of Lytle's testimony to the effect that he was able to carry out the lease contract. This testimony should have been excluded. It is true that plaintiffs alleged their contract to be one to procure a responsible tenant, but, as Brady accepted Lytle and entered into a lease with him, he is estopped from alleging anything against Lytle's responsibility, except fraud on the part of Hill in inducing the acceptance. No such issue was raised, and the testimony was irrelevant. In view of the construction placed on the contract by the trial court, the testimony was irrelevant because under such construction Lytle could comply with the contract by failure to pay rent, thus forfeiting the $9,000 on deposit with Brady, and therefore the testimony, if rightly understood, was of no aid to the jury. The testimony was calculated, however, to impress the jury with the idea that it was Lytle's intention to keep the property and pay the least promptly during the 15 years, and to cause them to allow compensation on the theory that the lease would continue for the entire time. If Lytle's ability to perform the contract had been an issue, the facts relating thereto should have been called for, and not his conclusion. The assignment is sustained.

The judgment is reversed, and the cause remanded.