### HULL–TEX OIL ASS'N v. PIPES.
### (No. 1945.)

(Court of Civil Appeals of Texas. Amarillo. April 12, 1922.)

**1. Fraud 22(1)—Diligence to ascertain truth unnecessary.**

The defrauded party need not use ordinary diligence to ascertain the true facts, especially where knowledge of such facts lies peculiarly with the other party.

**2. Mines and minerals 109—Evidence held to show that plaintiff had no information as to the depth of an oil well, except as falsely represented by defendant to induce ratification of a drilling contract.**

In a suit involving false representations as to the depth of an oil well, in order to induce plaintiff to ratify and confirm a drilling contract, evidence *held* to show that the plaintiff had no information as to the depth of the well, aside from representations made by the defendant.

**3. Customs and usages 18—Custom and usage must be specially and particularly alleged.**

In a suit involving an oil well drilling contract, an allegation that it was the duty of plaintiff to furnish suitable surface casing, which allegation might refer to a contractual obligation, was insufficient to admit proof of custom and usage in such respect, which matters must be specifically and particularly alleged.

**4. Appeal and error 837(11)—Evidence admitted without warrant of pleading is not basis for finding.**

Evidence admitted, as to a matter not pleaded, does not furnish any basis for a finding by the appellate court.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Suit by the Hull-Tex Oil Association against J. J. Pipes. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Wm. R. Watkins, of Wichita Falls, for appellant.

Mathis & Caldwell, of Wichita Falls, for appellee.

HALL, J. The appellant association filed this suit, alleging, in substance, that one F. J. Meek made a drilling contract in his own name, with the appellee, for drilling an oil well on a certain oil lease in Wichita county, the operating interest in the lease being owned by the appellant. The said contract was made without the authority of the appellant, and that about the 9th day of November, 1920, thereafter, the appellee, in order to induce appellant to ratify and confirm the drilling contract which Meek had made with him, falsely represented to appellant that he (appellee) had drilled the well under the contract to about 1,400 feet; that Meek had paid, out of the funds of appellant, the sum of $2,000 to appellee, under the contract; that Meek had been deprived of any authority to act for the appellant, and, at that time, the appellant's trustees were undecided as to whether they would ratify the contract; that, believing the truth of appellee's representations as to the depth of the well, which are alleged to have been material, appellant ratified said contract and agreed to pay the appellee the sum of $3,900 as "shutdown time," claimed to be due under the contract, which provided that, in the event of delays, occasioned by the fault of Meek, the appellee should be paid at the rate of $150 per day; that appellant further agreed to advance $1,000 on the total sum which would finally become due; that, after it had ratified the original contract, relying solely upon appellee's representations as to the depth of the well, appellee proceeded with the drilling operations, and three days thereafter negligently permitted a pair of back-up tongs to fall into the well, which he had not properly protected, and, as a result of this obstruction, he was not able to drill further but remained idle, fishing for the tongs about 18 days, during which period appellant had paid him in all $6,772.55; that, up to this time, appellant was without knowledge of the depth of the well, but, after the expiration of the said 18 days, appellant learned for the first time of the appellee's failure to protect the mouth of the well and discovered that the well was only 966 feet deep, whereupon appellant sought to discharge appellee and rescind the contract; that by reason of the careless handling of the well and the presence of the tongs therein, the services performed by appellee to said date were entirely worthless and that appellant had received no benefit therefrom.

Appellee filed his amended original answer, upon which the case was tried, containing a general denial and, by way of cross-action, alleged the execution of the contract in the amended petition; that appellee had performed, under said contract, his full duty; that appellant had caused a delay of 36 days, entitling appellee to $150 per day, shutdown time; that the supplemental contract was executed on November 9, 1920; that the well had been drilled to a depth of 1,121 feet; that he had been paid $3,000 for drilling and $2,500 shutdown money, leaving a balance due appellee of $4,847; that appellant is also indebted to appellee in the sum of $3,900, for shutdown time. He prayed for judgment and foreclosure of his alleged mechanic's lien. By supplemental answer, the appellee alleged that it was appellant's duty to furnish what is known as

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

surface casing for protection of the mouth of the well; that appellant did not furnish the casing; that, during the pendency of the injunction, the appellee's tools and instruments had been in possession of the appellant, by reason of which fact appellee was damaged in the sum of $50 per day, since December 1, 1920. There was a trial before the court without a jury, resulting in a judgment that appellant take nothing and that appellee recover of appellant the sum of $5,843.45, and foreclosing the appellee's mechanic's lien upon the property.

[1, 2] The first proposition urged is that the material representations of appellee, as to the depth of the well, having been found to be false, the presumption is that the appellant ratified the drilling contract in reliance upon such representations and that the burden was upon appellee to show, by conclusive evidence, that this was not the case, especially where the appellant's witnesses testified that they were relied upon and, having failed to discharge its burden, the judgment should have been for the appellant. The seventh finding of fact is:

"That, on November 9, 1920, appellee had represented to appellant that he had drilled the well to a depth of over 1,400 feet, but that said representations did not induce appellant to enter into the contract of November 9th, etc."

The witness Erwin, who had succeeded Meek as the managing officer of the appellant company, testified that he would not have ratified the original contract unless the appellee had assured him that the well was more than 1,400 feet deep, and that he relied upon such statement. The trial judge evidently did not believe this testimony. Erwin testified in part:

"Then when I came home Mr. Pipes came to my office the first day I arrived from Indiana —I had previously looked over and had the territory examined to determine whether I wanted to go on with the well, and I decided that I did want to go on with the well."

This is the only evidence of this witness, which even remotely tends to sustain that part of the court's finding that Pipes' representations did not induce the appellant to enter into the contract of November 9th. Taking the testimony of this witness as a whole, it is clear that he had no information as to the depth of the well, aside from the representations made by Pipes, and the evidence is uncontroverted that he took no steps to ascertain the depth of the well until about the middle of December. If the testimony of Erwin is disregarded, then there is no evidence either way upon that issue, and the question is: Is it the duty of the court, under all the other evidence, to presume that Erwin was induced to ratify by the fraudulent representations, and that he relied upon them alone? We have found no decision by the courts of this state upon this question. It seems though that, in all cases in other jurisdictions where the question has been squarely presented, the holding is unanimous in favor of the proposition. As said by the Supreme Court of Virginia, in Wilson v. Carpenter's Adm'r, 91 Va. 190, 21 S. E. 245, 50 Am. St. Rep. 830:

"When the seller has made a false representation, which, from its nature, might induce the buyer to enter into the contract on the faith of it, it will be inferred that the buyer was induced thereby to contract, and it does not rest with him to show that he, in fact, relied upon the representation. In order to displace this inference, the seller must prove, either that the buyer had knowledge of facts which showed the representation to be untrue, or that he expressly stated in terms, or showed by his contract, that he did not rely upon the representation, but acted upon his own judgment."

The rule is adopted in this state that the defrauded party does not have to use ordinary diligence to ascertain the true facts, especially in cases where knowledge of such facts lie peculiarly with the other party. Labbe v. Corbett, 69 Tex. 503, 6 S. W. 808; Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900; United States Gypsum Co. v. Shields, 101 Tex. 473, 108 S. W. 1165. Closely related to this holding, we think the rule should be as contended for and, as stated in 27 C. J., 49, as follows:

"Where, however, a person ignorant of the real facts and having no ready means of information enters into a transaction as to the subject-matter of which representations have been made which are material, the law will presume, as a matter of fact, that he relied on them."

It is further declared that:

"It does not require strong proof to establish that a person complaining of fraud was influenced by the false representation."

[3, 4] The contract between the parties contained no reference to surface casing and no provision as to who should furnish it. The court found that surface casing should have been used in drilling the well and that it should have been furnished by the appellant. The only two statements in the pleadings, from which it might be inferred that it was the duty of any one to provide surface casing, is the following allegation from the appellant's amended original petition:

"That the defendant then assumed drilling operations, and, at the end of three days, negligently allowed a pair of back-up tongs to fall in said well, in that he had not properly protected the mouth of said well as against the likelihood of falling objects."

And the supplemental answer:

"This defendant says that it was the duty of the plaintiff to furnish to the defendant proper casing and suitable casing, known as sur-

face casing, and for the proper covering of the opening of said well, and that the plaintiff did not furnish said casing."

These allegations cannot be construed as sufficient to admit proof of custom. The allegation that it was the duty of plaintiff to furnish it may mean that such duty arose under the contract. In order to admit proof of custom and usage, they must be specially and particularly alleged. We think the court erred in admitting this proof. Johnson v. Buchanan, 54 Tex. Civ. App. 328, 116 S. W. 875. The fact that evidence of such custom and usage was admitted without objection is immaterial. Where there are no pleadings to sustain the evidence, such evidence, even though admitted without objection, does not furnish any basis for a finding by the appellate court. Henry v. Phillips, 105 Tex. 459, 151 S. W. 533.

If the injunction were wrongfully and illegally issued herein, appellee would be entitled to recover damages by reason of that fact, though he would not be entitled to foreclose a mechanic's lien to secure the payment of such damages. The appellee waives his right to foreclose his mechanic's lien and offers to enter a remittitur for any sum improperly allowed as damages for the wrongful issuance of the injunction. The assignments, therefore, which challenge the judgment, in so far as it forecloses the mechanic's lien for these and other items, will not be considered.

For the error pointed out, the judgment is reversed, and the cause remanded.