DIEBOLD SAFE & LOCK CO. v. SHELTON.
(No. 663.)

(Court of Civil Appeals of Texas. El Paso. Feb. 8, 1917.)

BROKERS ☞56(3)—COMPENSATION—RIGHT TO.

Plaintiff, a broker, knowing that a bank would shortly require vault doors and other appliances, notified defendant company of that fact, and at defendant's suggestion sent blueprints and data regarding the building in which the vaults were to be inserted. Plaintiff at that time notified defendant that he was a broker and would expect commissions. Thereafter defendant entered into a contract with the bank for the sale of such vault doors and appliances. Held, that plaintiff, having brought forward and put defendant into communication with the bank with which it negotiated a sale, was entitled to commissions as a broker.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 86–89.]

Appeal from District Court, El Paso County; P. R. Price, Judge.

Suit by T. E. Shelton against the Diebold Safe & Lock Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Hudspeth, Dale & Harper, of El Paso, for appellant. W. D. Howe and H. R. Gamble, both of El Paso, for appellee.

WALTHALL, J. This suit was brought by E. E. Shelton to recover of the Diebold Safe & Lock Company commission on the sale of certain vault doors, etc., purchased by the Commercial National Bank of El Paso, Tex., from the Diebold Safe & Lock Company. Appellee alleged that he was engaged in a general brokerage and commission business, which facts were known to appellant; that by his efforts he brought the defendant and the Commercial National Bank together, and that he was the efficient and producing cause of a sale thereafter made to said bank by defendant; that about the 31st day of May, 1915, he learned that the bank was about to erect for itself new quarters, and would need for itself in said new quarters safes, vault doors, deposit boxes, steel linings for safes and other furniture and fixtures necessary for the banking business, which various articles were manufactured by and offered for sale by defendant.

The following is the correspondence between appellee and appellant:

"May 31st, 1915. Diebold Safe & Lock Company, Canton, Ohio—Gentlemen: I had some correspondence with you several years ago about representing you in El Paso, but at that time you said you were represented in the state by Mr. Noyes and I was not able to do any business with you. I have sold a great many safes since I have been in the general brokerage business here, some nineteen years, but have always been more or less a free lance, buying safes for cash and making my own profit over and above their net price. I have sold safes for the Herring, Hall, Marvin Safe Company and the Hall's as well. One of our banks has commenced a new structure and is going to need a round vault door, and I believe you, the York and the Mosler are the only safe companies in this country that manufacture the round doors; I presume you can meet the prices of the York and Mosler companies and would be pleased to know whether you would care to figure on this new work. If so, I am in position to send you a blueprint. You can do the billing and collecting and remit me after your bill is paid. You can make me a net price and I will add on my commission, you giving me a quotation f. o. b. El Paso. I do not believe you are represented here, and would like to deal direct through you, and not through any of your Texas agents. As for my references, will refer you to any of the banks of this city. I inclose stamped envelope for reply, and will be very much obliged if you will let me hear from you by first mail. Thanking you for taking up your time, and awaiting your answer, I remain, Yours very truly, T. E. Shelton."

Reply:

"Diebold Safe & Lock Co., Canton, Ohio. June 4th, 1915, Mr. T. E. Shelton, P. O. Box 451, El Paso, Texas—Dear Sir: Your valued favor of the 31st to hand and we note there is a vault coming up in your city and you are in close touch with the bankers. We would suggest that you forward B/Ps and all data regarding same to the Diebold Safe & Lock Company, 122 South Fifth Avenue, Chicago, Illinois, and they will make you up specifications covering the work and send them to you and

you can submit them to the bank. In sending this data, be sure and give full and complete information on everything so that our Chicago office can make you a full and complete specification. Very truly yours, Diebold Safe & Lock Co.. John Rundt, Sec."

"June 8th, 1915. Diebold Safe & Lock Company, 122 South Fifth Ave., Chicago, Ill.—Gentlemen: I wrote your main office at Canton, Ohio, asking if they would care to figure on a bank job here, and they referred me to your Chicago office, stating that you would make me prices, send specifications, etc. The Commercial National Bank of this city have commenced erecting a new bank building and they will have two vaults in this building, one in the basement which will be for books, and they only want a cheap, ordinary fireproof door for this vault. For the other vault they desire a round door, and I am sending you under separate cover blueprints showing the arrangement of the building. From the blueprint you can get an idea of the vault. They also want two hundred (200) deposit boxes, and these deposit boxes are to be in this big vault with a grille partition between the boxes and the safe. There should be a door in the grille partition so their customers can go in to their deposit boxes at any time. They are undecided as to how thick they want the steel for the vault door. I do not think they want anything very thick; in fact, Mr. J. D. Campbell, the manager, does not seem to know exactly what he does desire. He does know one thing—that he does not want a very expensive door; but I presume it will be impossible for him to secure a round door that will not cost several thousand dollars, for I am under the impression that round doors are expensive; any way, he wants the cheapest round door that you make. You will have the Mosler and the York safe companies as competitors, and I presume you know the style of doors they make and can more or less meet their prices. I will want to know the weight of each door, as well as the deposit boxes; and in fact, would like to have you submit prices on a separate sheet, on all the work installed in El Paso; or if you do not care to make such a quotation, make an f. o. b. price, El Paso, and I will add my commission, and I suppose about 10 or 15% would be about right for me; or you might include my commission in your quotation, say 15%. I will be glad to have you send specifications and blueprints, and photographs of the style of door that you propose to quote on; also the grille work and the steel for the vaults. I do not know whether I have made myself very plain or not, but I could not get very much information from Mr. Campbell, and anything you wish to know further about, please advise and I will try to give you the information. I gave my references to the home office in my letter to them of May 31st. Mr. Campbell states that the contractors have agreed to have the building all ready to occupy by November 1st. I presume they will want the doors installed by not later than Oct. 15th, which would mean that you would have to ship same not later than October 1st, possibly sooner. How long would it take for you to get this order out? Of course, if you could ship sooner than October 1st, it would be better. I would be much obliged if you would give this your immediate attention, and let me hear from you as soon as possible. Thanking you, I remain, Yours very truly, T. E. Shelton."

Reply:

"Diebold Safe & Lock Co., Chicago, June 11th, 1915, Mr. T. E. Shelton, 7 Morehouse Bldg., El Paso, Texas—Dear Sir: We have your favor of the 8th and we will proceed to make specifications and forward to you as soon as possible and make you price on same. Thanking you for the information we are, Yours very truly, Diebold Safe & Lock Company, by James Sullivan, Manager."

Telegram:

"Chicago, June 23, T. E. Shelton, Room 7 Morehouse Bldg., El Paso Regard Commercial Bank this job will probably be let at cost we will send man from here and allow you one per cent. on the net cost of the work for the influence which you have with the bank. Diebold Safe & Lock Co."

Letter reply to telegram:

"June 23, 1915. Diebold Safe & Lock Company, 122 South Fifth Ave., Chicago—Gentlemen: I am just in receipt of your telegram of this date advising me the job for the Commercial National Bank will probably be let at cost, and that you will send a man from Chicago and that you will allow me one per cent. on the net cost of the work, for my influence with the bank. I beg to advise you that I could not afford to accept your proposition. It would not pay me to fool with this work unless I could get not less than ten per cent, and should have fifteen by rights. I have other lines of work that will pay me a great deal better than anything like this. To my certain knowledge there has never been any bank work let in El Paso where the manufacturers did not make a good big profit. You can send your man along and let him go direct to the bank himself, and as I have already stated, I will not fool my time away with this bank work unless I can make not less than ten per cent. Yours very truly, T. E. Shelton."

Shelton testified in part:

"The negotiations stopped here (the letters and telegrams). * * * Saw Mr. Campbell several times about the sale of this door. * * * Told Mr. Campbell I wanted to bid on the work; that I had two or three companies that made safes. He told me he wanted a round door, and I told him I did not think there was but one company that I would take up with. I did not give the name."

J. D. Campbell testified in part:

"Is vice president of the Commercial National Bank. He and Barbee practically superintended the purchase of the vault doors. Have known the reputation of the Diebold Safe & Lock Company all his life. Wrote them, and asked if they would like to send a representative to give estimate on vault work. Wanted to have competitive bids. Wrote to no other lock company. Other companies were represented here and came to see him personally. Shelton had nothing to do with his writing the company. Had not heard from the company before writing them in regard to the doors. Got a reply to his letter. Thinks he wired the company to the effect: 'We think it advisable that a representative see us at once about submitting an estimate for vault door shipment, and if you wish to submit a bid wire when your representative will be on the ground.' On June 31st he received message: 'Our representative who we prefer to send to you is serving on jury this week. He can be with you first of next week. If you cannot wait give us by return wire at our expense as much information as possible and we will bid on same.' Campbell answered: 'Will not let contract for vault shipment until your representative arrives next Tuesday.' That wire was sent on June 22d. The company sent a representative. Did not recollect date of his first telegram. Thinks it was June 19th. Six thousand dollars was the amount of the purchase the bank made of the company, including two vault doors and safe deposit boxes. Shelton came into the bank in connection with this matter, thinks it was when we first started to build; said when we were ready he would like to submit bids. Did not know him in the transaction at all."

N. H. Constock, qualified as to knowledge of reasonable value of service for bringing

together buyer and seller in this class of work, said:

"I think as a go-between, if a man 'actually brought the buyer and seller together and there was a deal went through, I think five per cent. would be a reasonable compensation; if he would carry the deal through entirely by himself, why he should receive ten."

The case was tried without a jury, and the court rendered judgment for appellee for the sum of $300. The Court made no findings of fact.

The appellant presents several grounds of error, presenting substantially the following: Insufficiency of the evidence to sustain the judgment; it is not shown by the evidence that the plaintiff was the procuring cause of the sale by defendant to the bank of the vault doors, the other doors and safety lock boxes; that the evidence does not show that the plaintiff brought, or was the means of bringing, the seller and purchaser together; the bank had not been advised by plaintiff, nor otherwise had knowledge of the fact that plaintiff claimed to represent the defendant in the transaction, until after the bank had communicated with defendant and requested that defendant send a representative to bid in the matter, and that the bringing of the seller and purchaser together was brought about by the initiatory steps taken by the bank itself in addressing a telegram to defendant.

It is undisputed that Shelton was a broker, and, as Justice Neill said in Ross v. Moskowitz, 95 S. W. 86—

"a kind of go-between those who hath property to sell and those who hath money to buy, whose business makes one as industrious in bringing about a trade between others as Ramsey Sniffle was in pulling off a fight to which he was never a party, whose own business is the business of other men, which makes him know more about what one man should do with his property and another with his money than the man himself, who is always contriving and striving to bring others together, nolens volens, in a trade, and, who like Todgers, 'can do it for a consideration,' which the law allows as commissions."

The crucial question of fact in this case is: Does the evidence show that Shelton, as a broker, with the knowledge of the Diebold Safe & Lock Company, rendered it the service in negotiating the sale of the vault doors and safety boxes to the bank which resulted in its consummation? It is evident from the above testimony that Shelton, as a broker, took the matter up of negotiating the sale of the vault doors, the grille work and safety locks, for the appellant, and, at his suggestion and appellant's request, sent appellant the blueprints and all data regarding the building, then just beginning to be erected for the bank, and that Shelton's information as to what the bank would possibly need was the first information appellant had of the erection of the bank building and the goods the bank would need. Shelton advised appellant that he was a broker, suggested that

appellant make and send to him specifications of the style of doors, grille work and steel for the bank vaults, and advised that he would expect commissions, stating same. Appellant accepted and retained the blueprints and the information sent by Shelton, and in reply said:

"We will proceed to make specifications and forward to you as soon as possible and make you price on same"

—and thanking him for the information. This evidently was an acceptance of Shelton's service to serve as a go-between in negotiating the sale of the vault doors and safety locks to the bank, with knowledge that Shelton would demand a commission. If communication between the seller and buyer had not actually taken place, it was at least the bringing forward and designating a suitable buyer to whom the principal may sell in ordinary course of business. About 12 days elapsed before appellant's next communication, stating that it would send a man to take up the matter of sale directly with the bank, and that it would allow Shelton 1 per cent. commission, not for his past service, but "for the influence which you have with the bank." This further service Shelton declined, and further communication between appellant and Shelton ceased; Shelton voluntarily withdrawing from further participation in the transaction as broker. The proof shows that during the 12 days interim, the bank took the matter up with appellant, with request that it send a man to bid on the goods the bank would need. Appellant accepted the bank's suggestion, sent the man, and did not send the specifications to Shelton as agreed, but sent telegram as above. Meacham on Agency, § 2431 (2d Ed.) says:

"When the broker has brought forward or designated and put the principal into communication with a suitable person to whom the principal may sell in the ordinary course of business, he has, by the weight of authority, performed his undertaking."

In Wilson v. Mason, 158 Ill. 304, 42 N. E. 134, 49 Am. St. Rep. 162, it is said:

"The true rule is that the broker is entitled to his commissions, if the purchaser presented by him and the vendor, his employer, enter into a valid, binding, and enforceable contract."

We believe that the evidence discloses that Shelton had substantially performed all that was required of him as a broker, to entitle him to at least a reasonable commission, which the evidence shows to be five per cent. on the sale made.

The case is affirmed.