## McNABB v. WOOLFOLK. (No. 9830.)*

(Court of Civil Appeals of Texas. Fort Worth. March 18, 1922. Rehearing Denied April 29, 1922.)

1. Brokers ⬳69—Entitled to reasonable compensation where contract does not specify compensation.

Where contract does not specify the rate of compensation, the broker is entitled to a reasonable compensation.

2. Customs and usages ⬳12(1)—Broker, basing right to commissions on custom, must show principal's knowledge thereof.

Broker, who seeks to make his right to commissions depend upon usage or custom, must show that the usage or custom is so notorious as to affect his principal with knowledge of it, and raise the presumption that he dealt with reference to it, or must show that he had actual knowledge of it.

3. Brokers ⬳40—Actual employment and rendition of services contracted for essential to recovery of compensation.

To entitle broker to remuneration, there must be an actual employment, express or implied, and the whole service contracted for must be rendered.

4. Customs and usages ⬳13—Evidence of custom admissible to show commission recoverable in absence of a special agreement.

In the absence of a special agreement as to the amount of the broker's commissions, evidence of a custom at the time and place of employment becomes admissible for the purpose of determining it, since the law implies a promise to pay broker the usual and customary commissions; such testimony not being controlling, but admissible to establish the reasonable and customary commission.

5. Trial ⬳350(8)—Refusal to submit question as to whether owner reserved right to sell property held proper.

In broker's action for commission, where there was no contention that owner did not have the right to sell the property himself, refusal to submit question as to whether owner reserved the right to sell the property held proper.

6. Appeal and error ⬳1033(5)—Charge favorable to defendant not ground for reversal.

In broker's action for commission submitted on special issues, instruction charging that the burden of proof was on the broker to establish his cause of action as alleged held not ground for reversal on appeal by defendant; the charge being favorable to him.

Appeal from Young County Court; W. H. Reeves, Judge.

Suit by Charles Woolfolk against J. F. McNabb. Judgment for plaintiff, and defendant appeals. Affirmed.

Marshall & King, of Graham, for appellant.
Binkley & Moore, of Graham, for appellee.

BUCK, J. On December 20, 1920, Charles Woolfolk filed suit against J. F. McNabb, alleging that McNabb was indebted to plaintiff by reason of services rendered by plaintiff, as a real estate broker, in furnishing defendant the name of T. M. Corbett as a purchaser for defendant's home in Graham, and that by reason thereof defendant sold to said Corbett said home for $9,000. A general demurrer was overruled, and the cause submitted to a jury on special issues, and judgment entered thereon for plaintiff in the sum of $270. Defendant has appealed.

The following special issues were submitted to the jury and answers as indicated were given:

"(1) Did the defendant, on or about July 15, 1920, agree to pay plaintiff a commission to procure or inform him of some person who would buy the property in question in this lawsuit? Answer: Yes.

"(2) Was the plaintiff the procuring cause for the sale by J. F. McNabb to Tom Corbett of the property described and mentioned in plaintiff's petition? Answer: Yes.

"(3) What was the price paid by the said Corbett to the said McNabb for the property in question? Answer: $9,000.00.

"(4) What is a reasonable and customary charge of commission for procuring the purchaser to property in question? Answer: 3' per cent."

Appellant's first assignment complains of the admission of the testimony of the witness W. W. Price as to what was the usual and customary commission paid to brokers in the absence of an agreement to pay. Price testified in part as follows:

"I am familiar with the usual and ordinary and customary fees or commission paid real estate brokers in this vicinity for their services in the absence of an expressed contract for the sale of real estate. The usual and reasonable customary fee paid the brokers or agents for the sale of real estate in this vicinity is 5 per cent. of the sale price."

On cross-examination, and after objection had been made to the admission of the foregoing testimony, Price further testified:

---

"I don't know anything about the Woolfolk-McNabb deal; don't believe I am acquainted with either party to this suit. I don't know whether this would be a reasonable fee in this case or not. I don't know what would be a reasonable fee in this case. I do know that 5 per cent. of the sale price is the 'usual' fee charged by real estate brokers, that, however, is always subject to contract."

Woolfolk testified that he lived in Graham, Young county, and had been engaged in the stock business for the last 10 or 15 years, that is, buying and selling cattle had been his principal business; that he knew both T. M. Corbett and J. F. McNabb, being acquainted with the former for 15 or 20 years; that he had heard a month or so before Mr. Corbett bought this place that he was in the market for a house and lot in Graham, and had some time prior to the date of the sale mentioned this fact to Mr. Corbett, telling him that McNabb had a place for sale, and that he thought it was worth the money; that he started at one time to show Mr. Corbett some places in Graham, but when they started they went by a public speaking and got separated, and did not look at any houses; that a day or two after this he met McNabb on the street, and asked him if his place was for sale, and as to whether or not he would pay a commission; that McNabb told him that he had his place listed with some real estate men up the street, nodding his head to the north, and that, if he knew of a man that would purchase his place and would tell him the name of this man, he would pay him a commission for doing so. Mr. McNabb said all that he wanted plaintiff to do was to give him the name of the purchaser, and that he (McNabb) would look him up and close the deal, and pay plaintiff a commission for giving him the name of the purchaser. Plaintiff further testified that he did nothing more towards closing the deal except give McNabb the name of the purchaser; that subsequently the sale was made by McNabb to Corbett for $9,000; that after a few days he approached McNabb, and asked him about his commission, and he refused to pay him, telling him there was something or other about taking some royalty on the deal; that all McNabb asked him to do was to furnish him a name of a purchaser, and he would pay plaintiff a commission if he did so.

McNabb testified that he had talked to Mr. Corbett some 50 or 60 days before the deal was finally closed, and had told him about his houses he had for sale, and Corbett asked him if they were west front; that defendant replied that the house he was living in was a west front and Corbett did not seem to be interested in any house that fronted west; however, that Mr. Corbett said that he was not ready to buy at this time, and wanted to bring his wife and daughter over to look at any house and lot that he might buy, and that he might look at defendant's houses at that time; that he met the plaintiff on the street, the latter asking him if he had a place for sale; that he told him that he might sell his place, and plaintiff asked him if he would pay a commission, and defendant replied that he would not pay any man a commission; that he had let some fellows up the street have the place to sell, and to get all over a certain amount, but that he would never pay any man a commission for selling his property; that plaintiff replied that T. M. Corbett might be interested in buying the place; that defendant then informed plaintiff that he had already been talking to Mr. Corbett about the place; that subsequently he and Mr. Corbett got together and talked over the proposed deal, but did not agree on a sale; that later Mr. W. H. Corbett, brother of T. M. Corbett, came to him, and took up the negotiations, and he finally sold the place to T. M. Corbett for $9,000.

[1-3] A broker's compensation is ordinarily a commission on the price or value of the thing sold or exchanged, and his right thereto is dependent upon the terms of his employment and the performance of the service contracted for. Although the terms of his employment are silent upon the matter, so long as the services sued for were rendered at the request of the defendant, he is entitled to reasonable compensation. If the broker seeks to make his right to commissions depend upon usage or custom, he must show that the usage or custom is so notorious as to affect his principal with knowledge of it, and raise the presumption that he dealt with reference to it, or he must show that he had actual knowledge of it. To entitle him to any remuneration, however, there must be an actual employment, express or implied, and the whole service contracted for must be rendered. 4 R. C. L. p. 297, § 42.

In Diebold Safe & Lock Co. v. Shelton (Tex. Civ. App.) 192 S. W. 340, plaintiff, a broker, knowing that a bank would shortly require vault doors and other appliances, notified defendant company of that fact, and at defendant's suggestion sent blueprints and data regarding the building in which the vaults were to be inserted. Plaintiff at that time notified defendant that he was a broker, and would expect commissions. Thereafter defendant entered into a contract with the bank for the sale of such vault doors and appliances. It was held that plaintiff, having brought forward and put defendant into communication with the bank with which it negotiated a sale, was entitled to commissions as a broker.

Under an express agreement that a broker's services should be rendered to an owner directly soliciting such services or under an implied agreement showing the owner's appropriation of such services and where the compensation was not agreed upon, the law

implies a promise to pay a reasonable amount. Brady v. Richey & Casey (Tex. Civ. App.) 187 S. W. 508.

[4] In the absence of a special agreement as to the amount of the broker's commissions, evidence of a custom at the time and place of employment becomes admissible for the purpose of determining it. If there is a well-established custom in the neighborhood with respect to the amount of compensation to which a broker is entitled under the circumstances of the particular case, the law implies a promise on the part of the person employing him to pay the usual and customary commissions. If no agreement fixing commissions exists and no usage can be shown, the broker is entitled to reasonable compensation. Scully v. Williamson, 26 Okl. 19, 108 Pac. 395, 27 L. R. A. (N. S.) 1089, Ann. Cas. 1912A, 1265.

Plaintiff in the instant case in his petition alleged that he was to receive "the usual commission charged by real estate dealers of 5 per cent." In another paragraph he alleged that the defendant was due him "for said services as his said compensation therefor the sum of $450, with interest from the 15th day of August, 1920." We do not believe that by reason of the allegations in plaintiff's petition as to the amount of the commission to which he was entitled, to wit, 5 per cent. on the purchase price, he would be precluded from showing that a less amount of compensation was due, or that a verdict or judgment awarding a less amount would not be sustainable. Nor do we think that the testimony complained of is inadmissible under the allegations of plaintiff's petition aforesaid. The petition does not allege that defendant made a promise, either expressed or implied, to pay the usual commission charged by real estate dealers of 5 per cent., but alleged that defendant promised to pay plaintiff for his services, and that plaintiff was to receive the usual commission charged by real estate dealers of 5 per cent. There being no express agreement as to the amount of commission, the evidence as to what was the usual and customary and reasonable fee to be charged is admissible, we think; the basis of recovery being upon quantum meruit. Saunders v. Thut (Tex. Civ. App.) 165 S. W. 553. While such evidence would not be controlling, and the jury evidently in this case did not so regard it, yet we believe that such evidence was admissible as tending to establish what was the reasonable and customary commission. This assignment is overruled, as also the second assignment, which complains of the action of the court in not sustaining defendant's general demurrer urged at the close of plaintiff's evidence in chief, and the third assignment, which attacks the verdict and judgment because contrary to the evidence.

In 9 Corpus Juris, p. 614, it is said:

"If a broker who has found a customer does not take a binding contract from him, in order that he may be entitled to compensation on the consummation of a contract between the parties, it is not enough merely to put the customer on the track of property which the principal wishes to sell, or to put the principal on the track of a possible customer, but he must be the means of bringing the parties together. unless the principal refuses to complete the transaction after the terms are arranged by the broker. But it is not necessary that he should bring the customer into the presence of the principal or personally introduce them; it is sufficient that through his efforts the parties are brought into communication with each other, whereby their minds are brought together in an agreement. Where the parties are brought together as a result of the broker's efforts, and a sale, lease, or exchange results, the broker becomes entitled to a commission although he is not present during the negotiations following the introduction or takes no part therein."

See Webb v. Harding (Tex. Civ. App.) 159 S. W. 1029, and the same case by the Supreme Court in (Tex. Com. App.) 211 S. W. 927; Barnes v. Beakley (Tex. Civ. App.) 224 S. W. 531; Goodwin v. Gunter, on motion for rehearing, 109 Tex. 56, 185 S. W. 295, 195 S. W. 848.

Complaint is made in the fourth assignment to the action of the court in refusing to submit to the jury the issue:

"Did the plaintiff Chas. Woolfolk present his prospective purchaser, T. M. Corbett, to the defendant, J. F. McNabb, within a reasonable time after his alleged contract?"

There is no contention on the part of the plaintiff that he ever actually brought the defendant and Corbett together; his contention was that he gave to the plaintiff the name of Corbett as a prospective purchaser. This assignment should be overruled.

[5, 6] There is no contention that the defendant did not have the right to sell the property himself, and not be liable for a commission, except as to T. M. Corbett, and if the defendant should sell to him he would be liable for commission. Hence we think that there was no error in refusing to submit the question as to whether McNabb reserved the right to sell the property himself. Nor do we find any error in the charge of the court in instructing the jury that the burden of proof was upon the plaintiff to establish his cause of action as alleged. It is true the cause was submitted upon special issues, and in answering the same the jury should not be concerned as to whether their answers were favorable to the plaintiff or to the defendant, but the jury must have known from the petition that it was incumbent upon plaintiff to show that he had a contract with defendant whereby defendant was to pay him a commission if he procured or informed him of some person who would buy the property

in question, and to show that plaintiff was the procuring cause of the sale consummated between McNabb and Corbett. The charge as given was favorable to defendant, and we do not see that appellant has any right of complaint.

Under the eighth assignment appellant urges that the great weight of the evidence is in favor of the defendant, and that justice has not been done. The questions of fact were for the jury, and, so long as there is sufficient competent evidence to sustain the verdict and judgment, the appellant court is not authorized to set aside the judgment because in their opinion the preponderance of the evidence is in favor of the losing side in the trial court.

All assignments are overruled, and the judgment is affirmed.

---

⬩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes