## MARTIN v. LAW et al. (No. 11634.)*

(Court of Civil Appeals of Texas. Fort Worth. Nov. 13, 1926. Rehearing Granted Dec. 18, 1926. Further Rehearing Denied Jan. 15, 1927.)

1. **Brokers ☞82(4)—Broker cannot recover commissions on quantum meruit, in absence of proof of value of services rendered and expenses incurred.**

Real estate broker cannot recover commissions on plea of quantum meruit, in absence of evidence showing value of services rendered and expenses incurred.

On Motion for Rehearing.

2. **Brokers ☞86(8)—Evidence held to support recovery for broker's commissions on quantum meruit.**

Evidence relative to usual and customary commissions of real estate brokers effecting exchange of properties *held* sufficient to support recovery on quantum meruit.

3. **Customs and usages ☞15(1)—In absence of special agreement for broker's commission, evidence of custom is admissible to determine it.**

In absence of special agreement as to amount of broker's commission, evidence of custom at time and place of employment becomes admissible for purpose of determining it, since law implies promise to pay usual and customary commission.

4. **Customs and usages ☞15(1)—Evidence of general custom will sustain recovery for brokers' commissions on quantum meruit.**

Proof of general custom with reference to amount of commission real estate brokers are entitled to is sufficient to sustain recovery on quantum meruit.

Appeal from District Court, Parker County; F. O. McKinsey, Judge.

Suit by H. E. Law and others against J. P. Martin and another. Judgment for plaintiffs, and defendant J. P. Martin appeals. Affirmed on rehearing.

Hood & Shadle, of Weatherford, for appellant.

Goree, Odell & Allen, of Fort Worth, and Preston Martin, of Weatherford, for appellees.

BUCK, J. This suit was filed by H. E. Law and M. S. Jones, residing at Aledo, Parker county, and I. R. Williams, residing at Rhome, Wise county, against J. P. Martin, residing in Parker county, and J. H. Mecaskey, residing at Decatur, Wise county, for a real estate commission alleged to have been earned by the plaintiffs in the sale and exchange of lands belonging to defendants. It was alleged that Law was engaged in the real estate business at Aledo and Jones was the cashier of the bank there and was a partner of Law's and assisted him in the real estate and insurance business, and that I. R. Williams was a real estate man. It was alleged: That on or about May, 1921, J. P. Martin was the owner of certain lands in Parker county, consisting of some 885 to 900 acres, and that prior to said time Martin had listed said property with plaintiff Law for sale or exchange. That Martin agreed to pay Law a fair and reasonable commission for his services performed and to be performed in connection with said transaction. That J. H. Mecaskey was the owner of certain lands in Deaf Smith county, consisting of approximately 1920 acres, and that he had prior to May, 1921, listed said land with plaintiff I. R. Williams for sale or exchange. That plaintiff Law advertised the Martin land in the newspapers, and that Williams, seeing the advertisement, wrote to him, telling him that he had a client with whom he thought a trade could be made. The evidence shows that Williams and Mecaskey came to Aledo some time prior to May 24th, and that Law took them out to see Martin, whose farm was about five miles north of Aledo. That Martin went with them over the farm, and that they agreed that Martin should go with Mecaskey to see the Deaf Smith county land. Martin had some cattle in which he had an interest in New Mexico, and he wanted grazing land in the northwestern part of the state, so that he could bring his cattle down there from New Mexico. That Martin was pleased with the Deaf Smith county land, and the realtors and their principals met at Decatur on May 24, 1921, and entered into a contract whereby Mecaskey agreed to sell to Martin the three sections of land in Deaf Smith county and Martin agreed to sell to Mecaskey his land in Parker county. The Mecaskey land was valued at $19,200 and Martin's land at $34,200. Mecaskey agreed to give a vendor's lien note for $15,000 against the Martin land. It was further agreed that each party was to furnish an abstract of title to his land to be made satisfactory to the other party or his attorney. Later, Mecaskey refused to carry out the contract, on the ground that his attorney had turned down the limitation title on a part or the whole of the Martin land. Subsequently, Martin sued Mecaskey for more than $36,000 damages, by reason of his refusal to complete the sale and exchange. At one of their early meetings, and in anticipation of a consummation of the exchange of lands, Mecaskey asked Martin to have his land plowed, and agreed to pay, if the sale was consummated, $2 an acre therefor. If the sale was not completed, through failure of Martin's title, or from any other cause not attributable to Mecaskey, Martin was to pay for the plowing of the land. Martin's two sons, Jim Hogg, and John, and a young man named Singleton,

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction March 9, 1927.

were employed to plow the land, and they subsequently sued Mecaskey in the justice court at Aledo for debt, alleging that they severally had broken from 50 to 100 acres. Mecaskey filed his plea of privilege to be sued in Wise county, and, on appeal to the county court of Parker county, said plea was sustained. In the present suit Mecaskey filed his plea of privilege to be sued in Wise county, and the action, so far as he was concerned, was either transferred to Wise county or was dismissed, and suit there filed.

For some months after May, 1921, efforts were made by Martin and Mecaskey to adjust and settle Martin's suit for damages against Mecaskey, and several meetings were held at Fort Worth by the parties interested and the plaintiffs here and the attorneys of Martin and Mecaskey, in an effort to adjust the controversy, and, incidentally, perhaps, to complete an exchange of the lands. Finally, Martin traded with C. W. Wilson his Parker county farm for a hotel in Valley Mills, Bosque county. Thereafter Martin exchanged the hotel property with Mecaskey for certain lands in Deaf Smith county. In part at least the Deaf Smith county lands so exchanged for the hotel property were the same lands that had been originally contracted to be exchanged by Mecaskey for the Martin land. Mecaskey had sold part of the original three sections, and, in the final trade between him and Mecaskey, Martin did not get as much land in Deaf Smith county as he originally contracted for. Subsequently Martin traded back with Mecaskey, and then traded the hotel property for lands in Cottle county, upon which Martin was living at the time of the trial.

Plaintiffs below alleged: That the trade of the hotel property for the Deaf Smith county lands was in effect the consummation of the original contract between Martin and Mecaskey, in so far as Martin was concerned. That Martin desired grazing land, and that Martin and Mecaskey had become at "outs" with each other and did not speak to each other for several months, and that negotiations had been carried on by a third party, or third parties. That the plaintiffs were instrumental in bringing the parties together in the first place, and also in consummating the final trade.

The evidence is voluminous, the statement of facts consisting of some 146 pages, all of which we have read and considered with care. In the trial, the cause was submitted to a jury on special issues, which, with their answers, are as follows:

"1. Was the exchange between J. P. Martin and J. H. Mecaskey of the Valley Mills Hotel property for lands in Deaf Smith county brought about and effected, directly or indirectly, by virtue and in consequence of the written contract of exchange made by said parties and dated May 24, 1921? Answer: No.

"If you have answered the above issue in the affirmative, then you need not answer any of the following issues; but if you answer same in the negative, then answer the following:

"2. Did the defendant, J. P. Martin, employ the plaintiff H. E. Law, or engage his services, for the purpose of effecting an exchange of the Valley Mills hotel property for West Texas lands of J. H. Mecaskey? Answer: No.

"3. Did the defendant, J. P. Martin, agree to pay plaintiff H. E. Law a commission of 2½ per cent. on the valuation of $65,000 on the Valley Mills hotel property in event said exchange was made? Answer: No.

"4. Did the plaintiffs Law and Williams bring the defendants J. P. Martin and J. H. Mecaskey together, or bring about negotiations between them for the exchange of the Valley Mills hotel property for lands of Mecaskey in Deaf Smith county? Answer: Yes.

"If you have answered the foregoing issue No. 4 in the affirmative, then answer issue No. 5.

"5. Did said plaintiffs Law and Williams render services and expend any time and money in aid and furtherance of the exchange of said properties? Answer: Yes.

Upon this verdict so returned, the trial court entered judgment for plaintiffs for $1,129.65, with interest and costs of court. From this judgment the defendant Martin has appealed.

### Opinion.

[1] If the exchange by Martin of the Valley Mills hotel property with Mecaskey for the Deaf Smith county lands was not effected directly or indirectly by virtue of the contract of May 24, 1921, as the jury found in answer to issue No. 1, and Martin did not employ plaintiff Law, or engage his services, for the purpose of effecting an exchange of the hotel property for the Deaf Smith county lands, as was found by the jury in answer to issue No. 2, and Martin did not agree to pay Law a commission of 2½ per cent. for effecting the exchange, then the only ground on which Law could recover would be on a plea of quantum meruit. The issue as to whether Law or the plaintiffs was the producing cause of the exchange finally effected was not specifically submitted. The evidence fails to show what was the value of the services rendered, if any, and the expenses incurred, if any, by Law. In the absence of such proof, he could not recover on a plea of quantum meruit.

We are of the opinion that the trial court erred in rendering a judgment for plaintiffs under the circumstances shown. We hesitate to render judgment here for appellant, as he urges that we do, because the facts tend to show that the plaintiffs did expend considerable time and some money in their efforts to effect the deal. The evidence further tends to show that the final deal consummated was the result of the employment of plaintiffs below, as evidenced by the contract of May 24, 1921. Hence, we feel that it would be inequitable to deprive appellees, by a rendition

of a judgment for appellant, of any right they might have to recover.

The judgment below is reversed and the cause is remanded.

### Appellee's Motion for Rehearing.

Appellee has filed a vigorous motion for rehearing, calling our attention to certain bits of testimony to the effect that 2½ per cent. of the value of the property exchanged was the usual and customary charge at the time and place of this transaction. Counsel cites authorities in support of his contention that such proof is sufficient to establish the value of appellee's services under a plea of quantum meruit.

[2] In order for plaintiffs below to recover, it would be necessary to plead and prove that they were the procuring cause of the exchange of the Valley Mills hotel property for the Deaf Smith county lands. Furthermore, in order to support a judgment for plaintiffs, a finding to that effect would be essential. The question was not submitted to the jury nor requested by either party, but the court did find in his findings of fact filed that plaintiffs were the efficient and procuring cause of the exchange. In the absence of a request for a jury finding on this issue, the court's findings sustain the plaintiff's right to recover on this issue.

The court further found: That 2½ per cent. of the value of the property exchanged was at the time and is the usual and customary commission charged and received by agents and brokers for such services as were rendered by plaintiffs in effecting the exchange of properties made by and between defendant and J. H. Mecaskey. That the defendant accepted the agency of the plaintiffs and availed himself of their services for the purpose of effecting an exchange of the Valley Mills hotel property for the West Texas lands of J. H. Mecaskey. That $37,500 was the fair and reasonable cash value of defendant's Valley Mills hotel property at the time said exchange was made.

Law testified:

"Mr. Martin and I agreed on what would be a reasonable commission to me if I made an exchange of the property (testifying about the first trade). Our literature all stated 2½ per cent. commission on trades and 5 per cent. on cash sales; that is, I would get 5 per cent. on cash sales, and 2½ per cent. on exchanging properties. That was usual and customary in real estate business at that time and still is reasonable and customary. In a sale a man pays 5 per cent. and in a trade each man pays 2½ per cent. each way."

Defendant, Martin, testifying to his trade with Law in reference to the first deal, said: "I was to pay 2½ per cent. on the exchange of properties." No objection was made to any of this testimony. Law further testified: "We agreed on what would be a reasonable commission to me," etc.

[3] In Saunders v. Thut, 165 S. W. 553, by the Amarillo Court of Civil Appeals, the court held that where the petition alleged that defendant listed land with plaintiff to be leased, and listed cattle for sale, that plaintiff brought about a sale and leasing, and that he was entitled to a reasonable compensation of 25 cents per head for the sale of the cattle and 5 cents per acre for the leasing of the land, evidence as to the usual or customary commission charged for such services was in conformity with the pleading; the basis of recovery being upon quantum meruit. In the absence of a special agreement as to the amount of the broker's commission, evidence of a custom at the time and place of employment becomes admissible for the purpose of determining it, since the law implies a promise to pay the broker the usual and customary commission. See McNabb v. Woolfolk, 240 S. W. 1043, by this court.

In Yeiser v. Ward, 3 Tex. 430, the Supreme Court held that plaintiff, a carpenter, was entitled to recover for his work done, by proof of a customary price paid for carpenter work by the day; the plaintiff having proved that he was a skilled workman.

In Hunt v. Jones, a Missouri case, 105 Mo. App. 106, 79 S. W. 486, it was held that evidence of usual and customary real estate commissions is admissible to prove the reasonable value of the services of an agent who sells land for the owner. See Weil v. Schwartz, 120 S. W. 1039, by the San Antonio Court of Civil Appeals; Toland v. Williams & Wiley, 129 S. W. 392, by the Austin Court of Civil Appeals.

In Corpus Juris, vol. 9, p. 380, § 78b, the general rule as laid down by the author is as follows:

"In the absence of a special agreement as to the matter, the broker is entitled to a reasonable compensation, and this usually depends on the amount allowed by custom or usage locally prevailing among the particular class of brokers in question."

Cyc. vol. 19, pp. 283, 284, lays down the rule as follows:

"Customs and usages relating to the brokerage business may be proved in actions by brokers for compensation when relevant and material to the issue. If the contract of employment does not specify the compensation to be paid the broker, any evidence is admissible in the action for compensation which tends to show the reasonable value of the services."

Appellant cites three cases in support of our former judgment. The case of Hinton v. Coleman, 45 Wis. 165, by the Supreme Court, holds that a usage of trade, to be binding upon parties in the absence of an express agreement, must be clearly proven and shown to have been so well established, uniform, and notorious that the parties must be presumed to have known it and to have contracted with reference to it; that the testimony

of plaintiff that there was a custom in the city of Milwaukee to charge 3 per cent. on purchase price, when there was no express agreement as to the rate of compensation, was not sufficient; that this evidence was only pertinent to prove a customary price, or rather a price fixed by custom, and not to prove the value of the particular service performed in the purchase of the property in question.

[4] While there is some force in the statement made in the Wisconsin case, yet we are of the opinion that the majority and better ruling is that proof of the general custom with reference to the amount of commission is sufficient to sustain a recovery on quantum meruit.

In Harrell v. Zimpleman, 66 Tex. 292, 17 S. W. 478, by the Supreme Court, in an opinion by Justice Stayton, the Supreme Court held that where property is placed in the hands of a real estate agent for sale, he is entitled to reasonable compensation for his services, regardless of custom, in the absence of a contract making the right to compensation dependent on the sale of the property by him; that where a custom exists among real estate agents and their customers which entitles the agents to commissions on the sale of lands placed in their hands, whether the sale is made by them or others during the period it is under their control, such custom amounts to a contract, when it is known to their customers.

In the case of Stoddard v. Martin, 3 Willson, Civ. Cas. Ct. App. § 85, a judgment for plaintiff was reversed and remanded because there was no proof of the value of the services of the plaintiff. The report of the facts in this case are meager, but the reason given for reversal must be held to reflect the condition of the record. We think neither of our Texas cases are in conflict with the cases previously cited, and, while the Wisconsin case, or at least some of the statements therein, are perhaps in conflict, yet we feel that at least the majority of the authorities would support the conclusion that proof of the reasonable and customary commission to be charged by a broker would sustain a recovery by him.

We conclude that we erred in our original opinion in reversing the judgment and remanding this cause. Therefore we vacate the judgment heretofore rendered and here affirm the judgment of the trial court.

Appellee calls our attention to an immaterial error in our original opinion, in which we stated that "Martin's two sons, Jim Hogg and John, and a young man named Singleton, were employed to plow the land, and they subsequently sued Mecaskey in the justice court at Aledo for debt, alleging that they severally had broken from 50 to 100 acres. Mecaskey filed his plea of privilege to be sued in Wise county, and, on appeal to the county court of Parker county, said plea was sustained." Appellee says that in fact the plea was overruled by the county court of Parker county and Mecaskey appealed to the Court of Civil Appeals. We misinterpreted some of the testimony in the record and make this correction for the sake of accuracy.

Judgment heretofore rendered is set aside, and judgment of the trial court is affirmed.